IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA :
         :  CRIMINAL ACTION
    v.     :  NO. 1:06-CR-358-RWS-ECS
         :
ISMAEL ESTRADA    :

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

**I.**
**Background**

This matter is before the Court on Defendant's motion to suppress wiretaps, evidence and statements, [Doc. 133], as amended, [Doc. 139]. The government responded separately to the motion to suppress evidence and statements, [Doc. 137], and the motion to suppress wiretaps, [Doc. 138]. Defendant filed no reply to either response by the government. Defendant also filed a motion to dismiss the indictment, [Doc. 134]. At the pretrial conference held on June 24, 2010, Defendant was given until July 2, 2010 to particularize the motion, which he did not do. [Doc. 145]. The undersigned therefore took the motion under advisement on July 2. Upon consideration, the un-particularized motion to dismiss, [Doc. 134], should be **DENIED**. The motion to suppress tangible evidence and the motion to suppress wiretaps will be addressed separately herein.

**II.**
**The Motion to Suppress Evidence**

**A. The Defendant's Contentions**

The motion to suppress evidence attacks the constitutionality of the searches of three locations that occurred on March 17, 2006, pursuant to search warrants.  (Def.'s Br. at 23); [Doc. 133].  All three of the search warrants were based upon the same affidavit. The warrants related to locations in Atlanta at 250 Park Avenue West, Suite 504, (Defendant's residence); 144 Ponce de Leon, Apartment 1122 ("Alexan Terrace")(co-defendant Leslie Anderson's apartment); and 6025 Old National Highway (the location of Gumpy's Fish & Wings, a business allegedly owned and/or run by Defendant). Id.  The original motion also challenged the search and seizure of three vehicles, a 2005 Rolls-Royce Phantom, a 2005 Ford F-150 King Ranch, and a 2005 Bentley.  At the pretrial conference in this matter on February 12, 2010, Defendant withdrew the motion to suppress as it relates to the vehicles.  [Doc. 135].

The motion to suppress as it pertains to the search warrants asserts that the affidavit submitted in support of the warrants was unsupported by probable cause, contained stale information, failed to provide the necessary nexus between the location and evidence of criminal activity, and was overbroad in describing the items to be seized.  See (Def.'s Br. at 24); [Doc. 133].  Defendant also

2

contends that law-enforcement seized items beyond the scope of the warrant.[1]  See (Def.'s Br. at 26-27); [Doc. 133].

## B. The Sufficiency of the Warrants and Their Execution

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).  In Illinois v. Gates, 462 U.S. 213, 232 (1983), the Supreme Court explained that probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules."

In determining whether probable cause exists:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed.

_____

[1] The minutes for the pretrial conference on February 12, 2010, indicate that Defendant was given until March 12, 2010, to particularize the motion to suppress in certain respects, which Defendant did not do.  The government nonetheless responded to the motion on the merits and, despite the failure to particularize, the undersigned will address the motion on the merits.

Id. at 238-39.  Furthermore, "the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002).

To counter a charge of staleness, "the government 'must reveal facts that make it likely that the items being sought are in that place when the warrant issues.'" United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994)(quoting United States v. Domme, 753 F.2d 950, 953 (11th Cir. 1985)).  In this circuit, courts "do not apply some talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate, rather, we review each case based on the unique facts presented." Id. (citations omitted). In making a determination, courts "may consider the maturity of the information, nature of the suspected crime [], habits of the accused, character of the items sought, and nature and function of the premises to be searched." Id. (citations omitted).

A review of the affidavit in this case shows that it was amply supported by probable cause to believe that evidence of drug trafficking or money laundering would be found at the locations sought to be searched.  All three warrants were supported by the same twenty-one page affidavit executed by DEA Task Force Officer Tysner. See [Doc. 137, Exs. A, B, C]. The affidavit sets forth in detail the nature of the DEA's investigation into a large-scale

4

international drug trafficking operation in connection with which the DEA had been investigating Defendant and co-defendant Anderson since April, 2005, more than a year before the warrants were issued. See [Doc. 137, Exs. A, B, C].

The evidence of Defendant's involvement and participation in the criminal activity was supported by intercepted telephone conversations indicating Defendant's connection with Anderson in drug and money laundering transactions. Evidence of Defendant's involvement was also provided by confidential informants and corroborated by evidence from tracking devices and visual surveillance. Employment and banking records also supported probable cause to believe that a money laundering conspiracy was being carried on by Defendant with co-defendants Anderson and Sellers that involved Gumpy's Fish & Wings. See [Doc. 137, Exs. A, B, C].

The information in the warrant, some of it going back a year, was not stale, given the ongoing and continuing nature of Defendant's alleged criminal activity. Furthermore, a sufficient nexus was outlined for each location: Defendant's residence was a place where evidence of these criminal activities was likely to be found; Anderson's residence was also a place where evidence of her activities as a co-conspirator with Defendant would likely be found; and Gumpy's -- where banking and other public records indicated that

5

this entity was being used by Defendant as a vehicle for laundering drug proceeds -- was also a place where evidence would likely be located.   Likewise, Attachment B to the warrants sufficiently describes the items to be searched for and seized.   In short, Defendant's arguments with regard to the sufficiency of the warrant affidavit on the grounds of lack of probable cause, staleness, nexus, and particularity are without merit.[2]

But even if there was an issue as to probable cause, the good faith exception to the exclusionary rule would validate these warrants.   In <u>United States v. Leon</u>, 468 U.S. 897 (1984), the Supreme Court held that evidence need not be suppressed when police obtain the evidence through objective, good faith reliance on an initially valid warrant that is later found to lack probable cause. <u>Id.</u> at 920-21.   "The 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained

---

[2]   The government argued that Defendant lacks standing to complain about the warrant for search of co-defendant Anderson's apartment on Ponce de Leon, Alexan Terrace.   By amendment to the motion to suppress, however, Defendant provided an affidavit attesting to facts which make a prima facie showing of standing as to this residence, namely, that he had keys to and was regularly an overnight guest at the apartment; that he contributed to the rent; and that he kept personal items there.   <u>See</u>, <u>e.g.</u>, <u>Minnesota v. Olson</u>, 495 U.S. 91, 96 (1990)(overnight guest has reasonable expectation of privacy in premises).   The government does not argue lack of standing as to the other premises -- Defendant's residence and the Gumpy's business location.

AO 72A
(Rev.8/82)

officer would have known that the search was illegal despite the magistrate's authorization.  In making this determination, all of the circumstances . . . may be considered.'"  United States v. Taxacher, 902 F.2d 867, 871 (11th Cir. 1990)(quoting Leon, 468 U.S. at 922 n.23).  The good faith exception does not, however, extend to cases where the police have no reasonable grounds for believing that the warrant was properly issued.

In this case, the good faith exception under Leon would apply. None of the circumstances which might make an officer's reliance unreasonable are presented here: There is no evidence that the affidavit in this case was recklessly or deliberately false.  There is no evidence that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or that the warrant was "so facially deficient that an officer could not reasonably presume it to be valid."  Finally there is certainly no evidence that Judge Baverman wholly abandoned his judicial role in issuing these warrants.  See Leon, 468 U.S. at 923; see also Taxacher, 902 F.2d at 871.

Defendant also makes a pro forma argument that items were seized that were outside the scope of the warrant.  In particular, Defendant points to the seizure of jewelry from Defendant's person and residence to support this contention.  (Def.'s Br. at 34); [Doc. 133].  The government does not expressly address this contention.

7

As for the jewelry, however, while jewelry was not specifically included in the items to be seized in Attachment B, the officers certainly had probable cause to believe that such items likely represented property derived from illegal proceeds, subject to seizure and forfeiture under federal law and under the plain view doctrine.

**C. Conclusion**

In sum, the arguments made for suppression of the evidence seized under these search warrants are without merit. **IT IS THEREFORE RECOMMENDED** that the motion to suppress evidence derived from the search warrants be **DENIED**.

### III.
### The Motion to Suppress Wiretaps

**A. Background and Contentions**

Defendant also moves to suppress wiretap evidence, contending that he was an aggrieved person under 18 U.S.C. § 2510. In particular, Defendant seeks to suppress evidence derived from Target Telephones 7, 8 and 11. See (Def.'s Br. at 10, 21-22); [Doc. 133].

Defendant argues that the wiretap orders for each of these phones fail to provide probable cause (based on stale and unreliable information); that the necessity requirement was not met; that the order failed to show that other investigatory techniques failed; that the order failed to specify whose communications may be

8

intercepted; that the minimization requirement was not met; that the order failed to provide a sufficiently particular description of the communication sought to be intercepted; and that the interceptions may not have been sealed.   <u>See</u>   (Def.'s Br. at 1-23); [Doc. 133].

The government argues that Defendant lacks standing as to the wiretaps relating to Target Telephones 3 through 7 because he has pointed to no evidence that he was actually intercepted over these telephones or that he was named as a Target Subject or Named Interceptee in these wiretaps.   As for the continuation of Target Telephones 7, the government says the issue is moot because it will not seek to introduce evidence of any interceptions of Defendant on this telephone.   (Gov't Br. at 5-7); [Doc. 138].

As for Target Telephones 8 and 11, the government argues that a substantial basis for probable cause was demonstrated in the affidavit in support of the warrants.   (Gov't Br. at 10-24); [Doc. 138].   Further, the government argues that the necessity requirement was met by the recitations in the affidavit and that proper minimization procedures were followed.   (Gov't Br. at 24-34); [Doc. 138].   The government also avers that the order properly identified the interceptees and targets and that the descriptions of the type of communications were sufficiently particularized and that the interceptions from Target Telephones 8 and 11 were properly sealed. (Gov't Br. at 34-37); [Doc. 138].   Finally, the government argues

9

that the good faith exception to the exclusionary rule also applies to uphold the warrants.  (Gov't Br. at 37-39); [Doc. 138].

**B. Discussion**

    1. <u>Target Telephones 3 through 7</u>

    Section 2518(10)(a) of Title 18 of the United States Code provides that "[a]ny aggrieved person in any trial, hearing, or proceeding in or before any court. . . of the United States, . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that (i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval."  An "[a]grieved person" is defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."  18 U.S.C. § 2510(11).

    In this case, Defendant has not made out a prima facie showing that he is an "aggrieved person" entitled to suppress any communications intercepted in connection with the wiretap order covering Target Telephones 3 through 7.  Neither in the motion nor in response to the government's brief has Defendant pointed to any evidence that he was intercepted over these phones or that he was

named as a Target Subject or Named Interceptee in the application or the order. <u>See</u> [Doc. 138, Ex. A.]. Accordingly, Defendant's motion as it relates to Target Telephones 3 through the initial period of Target Telephone 7 should be **DENIED** for lack of standing.

On June 9, 2005, the interception of Target Telephone 7 was resumed for an additional 30-day period by means of an application that, according to the government, listed Defendant as "UM8" because he was unidentified at that point in the investigation. <u>See</u> (Gov't Br. at 7); [Doc. 138]. The government further states that Defendant was not intercepted during this period of interception and that the government will not rely on any interceptions of Target Telephone 7 for this additional period of interception authorized by the order of June 8, 2005. <u>Id</u>. Under these circumstances, any challenge to the interception of Target Telephone 7 or its authorizing order should be **DENIED** as **MOOT**.

2. <u>Target Telephones 8 and 11.</u>

In addition to Target Telephone 7, Defendant's motion also challenges Target Telephones 8 and 11.[3] Defendant was listed as a Targeted Subject in the Report to the Court relative to Targeted

---

[3] Defendant's motion does not point to any intercepted calls on Target Telephones 9 or 10. In addition, the government confirms that Defendant was not intercepted on these telephones and that it does not intend to use interceptions from Target Telephones 9 and 10 in its case-in-chief. (Gov't Br. at 15); [Doc. 138]. Therefore, Defendant's motion is **MOOT** as to these Target Telephones.

11

Telephone 8, and the government concedes that calls were intercepted in which he was a party. See (Gov't Br. at 21-22); [Doc. 138]. As for Target Telephone 11, Defendant asserts, and the government concedes, that Defendant was also intercepted on Target Telephone 11. Thus, standing as an aggrieved party is not an issue as to Target Telephones 8 and 11.

a. Probable Cause

With regard to Target Telephone 8, it appears from a review of the affidavit that there was a substantial basis for District Judge Shoob to have found probable cause for issuance of this wiretap order on May 26, 2005. An application for a wiretap authorization must be supported by the same probable cause required for a search warrant. See United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990). The issuing judge must make a "practical, common-sense decision" about whether the "totality of the circumstances" indicate that there is probable cause that the sought-for evidence will be obtained. Id. (citing Gates, 462 U.S. at 238). The standard for review of the authorizing judge's determination of probable cause is "to ensure that the [judge] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39 (citation omitted). Furthermore, the practical nature of the judge's probable cause decision justifies "great deference" and

12

calls for upholding the issuing judge's findings even in marginal
or doubtful cases.  Id.

Here, Judge Shoob was presented with a 58-page affidavit in
support of the application to intercept Target Telephone 8. [Doc.
138, Ex. C].  Suffice it to say that the affidavit set forth facts
indicating that in May of 2005, Target Telephone 8 was being used
on an ongoing basis in connection with a drug trafficking conspiracy
to facilitate the sale and delivery of large quantities of illegal
drugs across state and international boundaries.  Information
obtained from wiretaps involving other Target Telephones was
corroborated by information obtained from confidential sources
cooperating with the government.  There was ample basis set forth
in the affidavit to authorize the wiretap of Target Telephone 8.

As for Target Telephone 11, sufficient probable cause was
likewise presented to justify the signing of the authorizing order
by Judge Thrash on June 20, 2005. [Doc. 138, Ex. E].  In this order
Defendant Estrada and co-defendant Anderson were named as
Interceptees and Target Subjects.  Again, in the affidavit,
information obtained from confidential sources is presented
evidencing a large scale drug trafficking organization known as the
Gulf Coast Cartel importing large quantities of cocaine and other
drugs into the United States and thence to Atlanta.  The information
from the sources is also corroborated by visual surveillance, the

13

use of tracking devices and from interceptions of conversations on other Target Telephones.

The information regarding the ongoing drug trafficking activity contained in the affidavit was developed over a period of time of at least a year prior, with much of it contemporaneous with the application for the wiretaps.  It is related in the affidavit that Defendant had been intercepted on several occasions on Target Telephone 8 speaking with "Guero," a distributor in Atlanta and one of the primary targets of the investigation, about setting up a delivery.  Details from the conversations were corroborated by physical surveillance.  Although the subjects often spoke in what appears to be coded language referring to their drug activities, taken in context the DEA Officer-affiant's interpretation of this language as drug related appears to be reasonable.  The volume of the calls and the nature of the calls would lead a reasonable listener to conclude that the parties were talking in code about illegal drug activity.  The affidavit presents ample facts to support a finding of probable cause for issuance of the order authorizing the tap on Target Telephone 11.  See [Doc. 138, Ex. E].

b. Necessity and Failure of Other Techniques

Defendant argues that the applications and affidavits for Target Telephones 8 and 11 are invalid because they do not show necessity for the wiretaps; and that they fail to show that other

14

investigative techniques failed. (Def.'s Br. at 16, 22-23); [Doc. 133]. An application for an order authorizing a wiretap must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The necessity requirement is designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed. United States v. Giordano, 416 U.S. 505, 515 (1974); United States v. Kahn, 415 U.S. 143, 153 n.12 (1974). The affidavit supporting an application need not show a "comprehensive exhaustion of all possible techniques," but need explain only the failure of those techniques "that reasonably suggest themselves." United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986).

Here, a review of the affidavits shows that they provided extensive explanation of the techniques already employed and the reasons why the wiretaps were necessary. Defendant's primary argument revolves around the use of informants. Defendant argues that through the confidential informants the government was succeeding in its investigative goals. In addition, Defendant argues that the affidavit fails to show that search warrants and trash pulls could not have been successfully used or would have failed. (Def.'s Br. at 15-16); [Doc. 133].

15

To the contrary, however, the affidavits reveal that while conventional means of investigation had been employed with some success, the goal of the investigation was to dismantle not only the local operations of the drug traffickers but also the operations and sources of supply on a broader scale. The premature use of search warrants would not have been successful in achieving the goal of identifying the higher-ups in the organization as well as other participants down the line in the distribution chain. The use of informants, while successful to a point, was necessarily compartmentalized, limiting the ability to reach members outside their respective compartments, or "cells." The goal, as stated in the affidavits, was not only to target the local operations but also to prosecute the highest-level members of an international conspiracy, including Mexican based sources of supply. The affidavits adequately demonstrated why conventional techniques would not have been successful. In short, the affidavits in this case were sufficient in their showing of necessity. [Doc. 138, Exs. C, E].

c. Identification of Person Intercepted

Defendant incorporates by reference his perfunctory argument about identity made with regard to Target Telephone 7 and applies it to Target Telephones 8 and 11. The argument as to Target Telephone 7, in turn, refers to unspecified discussion "supra."

16

(Def.'s Br. at 17); [Doc. 133].  A review of the orders, however, reveals that the contention that the subject orders fail to specify the identity of persons whose communications may be intercepted is completely without merit.

d. Minimization

Defendant also argues in a perfunctory manner that, "[u]pon information and belief, law enforcement agents failed to comply with the minimization requirement of 18 U.S.C. § 2518(5)," incorporating this argument made for Target Telephone 7 as an argument for Target Telephones 8 and 11.   (Def.'s Br. at 17, 22-23); [Doc. 133].  No facts are alleged to support this allegation.   Contrary to this contention, the affidavits recite that minimization techniques would be used, and the government reported minimization to the Court for Target Telephones 8 and 11.  See (Gov't Ex. C at 56-57); (Gov't Exs. E, F to Attachment A); [Doc. 138].  This contention is without merit.

e. Description of Communications

Defendant argues that the applications and orders are insufficient on their faces for failure to provide a sufficiently particular description of the type of communications sought to be intercepted.  (Def.'s Br. at 18); [Doc. 133].  No specifics are argued and no authority cited.  This  argument is without merit.

17

The applications and orders sufficiently describe the communications to be intercepted.

> f. Sealing

Defendant argues that "the wiretaps may not have been sealed as required by 18 U.S.C. 2518(8)(a)." (Def.'s Br. at 18-19); [Doc. 133]. To the contrary, however, the record reflects that the interceptions were sealed by court order 30 days after the commencement of a wiretap on Target Telephone 8 and within 30 days of the inception of Target Telephone 11. See (Gov't Exs. G, H); [Doc. 138].

> g. Good Faith Exception

Defendant submits that there is no good faith exception to the exclusionary rule for a wiretap warrant obtained under Title III. (Def.'s Br. at 19); [Doc. 133]. The Eleventh Circuit, however, has recognized and applied the exception in a wiretap case. United States v. Malekzadeh, 855 F.2d 1492, 1497 (11th Cir. 1988), as have the Eighth and Fourth Circuits. See United States v. Moore, 41 F.3d 370, 376 (8th Cir. 1994), cert. denied, 514 U.S. 1121 (1995); United States v. Brewer, 204 Fed.Appx. 205, 208 (4th Cir. 2006)(unpublished). Other courts outside this circuit have disagreed, see United States v. Rice, 478 F.3d 704, 712-13 (6th Cir. 2007); People v. Jackson, 129 Cal.App.4th 129, 28 Cal.Rptr.3d 136, Cal.App. 2 Dist. (2005), and at least one district court within this

18

circuit has questioned the doctrine's applicability generally and declined to apply it.  <u>See</u> <u>United States v. Ward</u>, 808 F.Supp. 803, 807-08 (S.D.Ga. 1992); <u>but</u> <u>see</u> <u>United States v. Royster</u>, 2007 WL 4336321, at *10 (M.D.Ga. Dec. 7, 2007)(following <u>Malekzadeh</u> and applying <u>Leon</u> good faith exception).

Based upon the above authority, it appears that the good faith exception applies to wiretap orders in this circuit.  As noted above, generally speaking "[t]he 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.  In making this determination, all of the circumstances . . . may be considered.'" <u>Taxacher</u>, 902 F.2d at 871 (<u>quoting</u> <u>Leon</u>, 468 U.S. at 922 n.23).  The good faith exception does not, however, extend to cases where the police have no reasonable grounds for believing that the warrant was properly issued.

In this case, the undersigned has not found that the wiretap application, affidavit or orders violated the law.  <i>A fortiorari</i>, none of the circumstances which might make an officer's reliance unreasonable are presented here: There is no evidence that the affidavits in this case were recklessly or deliberately false.  There is no evidence that the affidavits were "so lacking in indicia of probable cause as to render official belief in its existence

19

entirely unreasonable," or that the orders were "so facially deficient that an officer could not reasonably presume [them] to be valid." Finally there is certainly no evidence that any of the district judges who signed the orders wholly abandoned their judicial role in issuing these warrants.

**C. Conclusion**

The undersigned concludes, based upon the above discussion, that the motion to suppress wiretaps, [Doc. 133], should be **DENIED**.[4]

**IV.**
**Conclusion**

In conclusion, the undersigned **RECOMMENDS** that the motion to suppress evidence, both with regard to the premises searched under search warrants and with regard to the wiretap orders, [Doc. 133, 139], be **DENIED**.

---

[4] Defendant argues in one line under probable cause for Target Telephone 8 that the taint from infirmities in the authorization of the tap on Target Telephone 7 fatally infects probable cause for this wiretap. See (Def.'s Br. at 21); [Doc. 133]. For the reasons stated above, the undersigned has concluded that Defendant has no standing to challenge the initial order for Target Telephone 7 and that the challenge to the extension of Target Telephone 7 is moot. Nevertheless, the undersigned's review of the affidavits and applications for Target Telephone 7 would lead the undersigned to conclude that Defendant's challenge to these wiretaps on the merits would be denied for the same reasons set forth herein as to Target Telephones 8 and 11. In other words, the undersigned incorporates by reference herein his arguments with respect to Target Telephones 8 and 11 as equally applicable to Target Telephone 7.

AO 72A
(Rev.8/82)

**IT IS FURTHER RECOMMENDED** that the motion to dismiss, [Doc. 134], be **DENIED**. It appearing that there are no further pretrial or discovery matters to bring before the undersigned as to this defendant, it is therefore **ORDERED** that this defendant be and is hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED** this 30th day of July, 2010.

_/s/ E. Clayton Scofield III_
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

21